AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

| | |
|---|---|
| In re Application of FourWorld Event Opportunities, LP, and Genesis Emerging Markets Investment Company<br>*Plaintiff*<br>v.<br><br>*Defendant* | )<br>)<br>)<br>) Civil Action No.<br>)<br>)<br>) |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To:        Bain & Company, Inc. and Bain & Company China, Inc.
              131 Dartmouth Street, Boston, MA 02116

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See schedule B hereto.

| Place: | Beck Reed Riden LLP<br>155 Federal Street, Suite 1302<br>Boston, Massachusetts 02110 | Date and Time: |
|---|---|---|

The deposition will be recorded by this method:    Stenography and videography.

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
       Within 30 days from service of this Subpoena, you shall produce to the undersigned counsel, all documents and things that are responsive to the requests set forth in Schedule A hereto in accordance with the definitions and instructions therein.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

                *CLERK OF COURT*

                                  OR

_____       _____
*Signature of Clerk or Deputy Clerk*                       *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Four World Event Opportunities LP and Genesis Emerging Markets Investment Company , who issues or requests this subpoena, are:
Stephen Riden, Beck Reed Riden LLP, 155 Federal St., Ste. 1302, Boston, MA 02110 sriden@beckreed.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

[Print]  [Save As...]  [Add Attachment]  [Reset]

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**DEFINITIONS**

a. "Board" shall mean the Company's Board of Directors.

b. "Buyer Group" means the following entities, including each entity's respective divisions or business segments, predecessors, successors, assigns, parents, subsidiaries, affiliates, members, partners, shareholders, owners, officers, directors, employees and agents and any person acting or purporting to act on their respective behalf:

    i. Warburg Pincus LLC ("Warburg Pincus");

    ii. General Atlantic LLC ("General Atlantic");

    iii. Ocean Link Partners L.P. ("Ocean Link Partners L.P.");

    iv. Jinbo Yao; and

    v. Rollover Shareholders (defined below).

c. "Commercial Due Diligence Report" means the commercial due diligence report of the Company and/or the Merger prepared by You dated June 2020, as identified in the definition of Reports in the Facilities Agreement submitted as Exhibit (b)-(6) to the amended Schedule 13E-3 filing by the Company in connection with the going-private transaction on September 18, 2020.

d. "Company" or "58.com" means 58.com Inc., and its parents, subsidiaries, affiliates, and any entities under its control and each of its employees, directors, officers, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control, including any other entities in which the Company had an ownership interest as of September 6, 2020 (including all Established Businesses, Consolidated Incubated New Businesses, Deconsolidated Incubated New Businesses or Other LT Investments

within the organisational structure of the Company as identified by Houlihan Lokey in Exhibit (C)-(3) of the Company's Schedule 13E-3 Privatisation Statement dated July 6, 2020.

  e. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

  f. "Concerning" means relating to, referring to, describing, evidencing or constituting.

  g. "Dissenters' Rights" as referred to in the Proxy Statement, means the rights of dissenting shareholders to receive the fair value of their shares as determined in the Cayman Islands Appraisal Proceeding.

  h. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

  i. "Fairness Opinion" means any written opinion concerning the Merger produced by You, and/or any financial advisor hired by the Company, the Special Committee, or a member of the Buyer Group.

  j. "Go-shop" is a procedure by which a company is permitted to solicit competing bids.

  k. "Houlihan Limited" means Houlihan Lokey (China) Limited, including the entity's divisions or business segments, predecessors, successors, assigns, parents, subsidiaries, affiliates, members, partners, shareholders, owners, officers, directors, employees and agents and any person acting or purporting to act on their respective behalf.

l.     "Hsu" or "Christopher Hsu" means Christopher Hsu, and each of their employees, agents, attorneys, accountants, representatives, and any other person or entity acting on their behalf or subject to their control.

m.     "Including" means including, without limitation, the specific matter, documents or electronically stored information described.

n.     "Kaihui Limited" means Kaihui Limited, as referenced in the Proxy Statement, and its parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control.

o.     "Kilometre Capital" means Kilometre Capital, and its parents, subsidiaries, affiliates, and other entities under its control and each of its employees, directors, officers, agents, attorneys, accountants, investigators, representatives, and any other person or entity acting on its behalf or subject to its control.

p.     "Market Check" is a process by which a company contacts potential bidders.

q.     "Merger" means the going-private transaction contemplated within the Merger Agreement and referred to in the Proxy Statement.

r.     "Merger Agreement" means the agreement and plan of merger dated June 15, 2020 that the Company entered into in connection with its going-private transaction, which is referred to in the Company's Proxy Statement.

s.     "MoM Condition" is a protection that would have required a majority of the minority shareholders to approve the Merger.

t.     "Petitioners" means funds that invested in 58.com and owned 58.com shares immediately before the effective date of the Merger.

u.      "Proxy Statement" means the Company's Proxy Statement, Form DEF 14A, dated August 7, 2020, available at https://www.sec.gov/Archives/edgar/data/0001525494/000110465920091704/tm2026132d1_ex99-a1.htm.

v.      "You" "Your" and "Yours" means Bain & Company, Inc., Bain & Company China, Inc. and each of your subsidiaries, employees, directors, agents, attorneys, accountants, representatives, and any other person or entity acting on your behalf or subject to your control.

w.      "Rollover Shareholder" means the shareholders of 58.com, including but not limited to Tencent Holdings Limited and its affiliates, whose shares were converted into shares of the Surviving Company and were not cashed out in exchange for the Merger price or appraisal rights.

x.      "Special Committee" means the committee of the Board comprised solely of the outside directors of 58.com that was tasked with, *inter alia*, evaluating the fairness of the Merger, including the committee's divisions or business segments, predecessors, successors, assigns, parents, subsidiaries, affiliates, members, partners, shareholders, owners, officers, directors, employees and agents and any person acting or purporting to act on their respective behalf.

y.      "Surviving Company" means the privately held company defined as the "Surviving Company" in the Proxy Statement that was formed as a result of the Merger.

## INSTRUCTIONS

1.      These document demands are intended to and do cover all documents in your possession, custody or control, including those belonging to your employees, attorneys, accountants, or other representatives.  These document demands also are intended to and do cover any and all documents you are authorized or have the practical ability to retrieve.

2. Each request for a document contemplates production of the document or electronically stored information in its entirety, without abbreviation or expurgation.

3. Documents or electronically stored information provided shall be complete and, unless privileged, unredacted, submitted as found (*e.g.*, documents that in their original condition were stapled, clipped or otherwise fastened shall be produced in such form). To the extent any responsive document is attached to another document through manual or electronic (*e.g.*, e-mail) means, both the responsive document and any attachment(s) should be produced. To the extent only a portion of a document or electronically stored information is privileged, the non-privileged portion should be produced and any redactions should be clearly marked.

4. Electronically stored information ("ESI") should be produced in the following format: Single Page TIFFs, Document level text files (text-searchable), Native Files, .DAT with standard Concordance delimiters (should contain the path to native files and text files), .OPT image load file (should contain the page count and volume path). Such ESI includes, but is not limited to, electronic mail, SMS messages and other forms of mobile text or messaging formats (including but not limited to Bloomberg messages, Instant Bloomberg chats, WeChat messages, WeCom messages, QQ messages, Signal and WhatsApp messages), calendar entries, documents created with word processing software such as Microsoft Word, pictures, audio and video recordings, and documents in Portable Document Format ("PDF").

5. With respect to any documents that are withheld, whether under claim of privilege or otherwise, provide all information regarding the asserted privilege and the materials being withheld. Privileged attachments should be listed separately. Non-privileged attachments should be produced.

6. If no documents exist that are responsive to a particular request, please so state in writing.

7. These demands require production of copies of all electronically stored information in native electronic format, including production of all metadata.

8. No part of a request may be left unanswered, or documents and things not produced, merely because an objection is interposed as to any other part of a request. Where an objection is made to any request, or subpart thereof, the objection must state with specificity all grounds and must state whether any responsive materials are being withheld on the basis of that objection. All objections to the production of documents, information, or other things requested herein must be made in writing and delivered to counsel of record for the Petitioners.

9. This subpoena is deemed continuing in nature and you are obliged to produce responsive documents and to supplement your production whenever additional documents are located or their existence ascertained.

10. Unless otherwise specified, each request pertains to the period of January 1, 2020 through September 6, 2020.

## DOCUMENT REQUESTS

1. Documents sufficient to show the terms of Your engagement and scope of work in connection with the Merger.

2. Any and all versions of the Commercial Due Diligence Report, including any and all drafts of the reports, presentations, and read-out materials.

3. All Documents and Communications provided to, created or sent by You in conducting commercial due diligence in connection with the Merger, including in preparing the Commercial Due Diligence Report.

4. All Documents and Communications generated as part of the development of the Commercial Due Diligence Report, including any and all presentations and/or read-out materials of the Commercial Due Diligence Report and any and all models (such as Excel models) created in preparing the Commercial Due Diligence Report.

5. Documents and Communications sufficient to identify attendees for any and all presentations and/or read-outs of the Commercial Due Diligence Report.

6. All notes, transcripts, summaries, or other Documents created as part of the Commercial Due Diligence process (including in connection with any interview conducted).

7. All Documents and Communications provided to, created or sent by You Concerning the Merger, including but not limited to, the value to the Merger of whether or not to conduct a Market Check, the MoM Condition, a Go-Shop, Dissenters' Rights and the proposed Merger price.

8. All Documents and Communications provided to, created or sent by You Concerning the valuation of the Company, including but not limited to valuation reports, Fairness Opinions, solvency opinions, appraisals, analyses, reviews, discounted cash flow or other comparable companies analysis, or other Documents Concerning any metric of value, including market value, book value or fair value of the Company, its stock, or any of the Company's assets or businesses, and/or qualitative or quantitative discussions or analysis of any synergies (including the value or valuation of such synergies) from the Merger, or any analyses, projections, estimates of any return (such as internal rate of return (IRR) or any other return computation), including Documents and Communications Concerning the Merger provided to You in connection with the Commercial Due Diligence Report.

9. All Documents and Communications Concerning provided to, created or sent by You Concerning any forecast of the future performance of the Company, including but not limited to cash flow projections.

10. All non-privileged Documents and Communications provided to You Concerning a potential, pending, or ongoing Cayman Islands Appraisal Proceeding and/or other risk of litigation related to the Merger (in the Cayman Islands or elsewhere), including risk analysis, internal reports, and discussions of implications for public relations and business strategy.

11. All Documents and Communications provided to, created or sent by You relating to any other potential acquisition or investment in the Company or any part of it whether or not considered by the Company's management or Board.

12. All Documents and Communications exchanged between You and the Buyer Group, including any employee, agent, or representative thereof, Concerning the Company, the Merger, the Merger approval process, any strategist alternatives to the Merger, and/or any other issues related to the Merger.

13. All Documents and Communications exchanged between You and the Company, including any employee, agent, or representative thereof, Concerning the Company, the Merger, the Merger approval process, any strategist alternatives to the Merger, and/or any other issues related to the Merger.

14. All Documents and Communications exchanged between You and Christopher Hsu, Kaihui Limited, or Kilometre Capital Concerning the Company, the Merger, the Merger approval process, any strategic alternatives to the Merger, and/or any other issues related to the Merger.

9

15. All Documents and Communications exchanged between You and the Special Committee Concerning the Company, the Merger, the Merger approval process, any strategic alternatives to the Merger, and/or any other issues related to the Merger.

## SCHEDULE B

## DEPOSITION TOPICS

The Definitions in Schedule A are incorporated herein by reference. You shall testify Concerning:

1. The method by which Documents were identified, collected, and reviewed for production in response to this subpoena.

2. The due diligence that You conducted in Concerning the Merger.

3. The Commercial Due Diligence Report.

4. The advice You provided and analysis You conducted Concerning the Merger.

5. The advice You provided and analysis You conducted Concerning the Facilities Agreement for the Merger.

6. Any interviews You conducted in connection with Your work Concerning the Merger.

7. Any written questions and answers exchanged with the Company in connection with Your work Concerning the Merger, including as part of preparing the Commercial Due Diligence Report.

8. The process and analysis You undertook in preparing the Commercial Due Diligence Report.

9. Your analysis and review of any financial projections or plans Concerning the Company, and/or or plans Concerning the Company as a whole, or any business units of the Company.

10. Your review and consideration of any valuation reports, fairness or solvency opinions, appraisals, analyses, reviews or other Documents Concerning the value, market value,

book value or fair value of the Company, its stock, and/or any of the Company's assets or businesses, including any assumptions underlying all analyses, opinions, or projections Concerning the Company.